

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

United States District Courthouse
300 Quarropas Street
White Plains, New York 10601

July 30, 2015

**BY HAND DELIVERY**
The Honorable Vincent Briccetti
United States District Judge
Southern District of New York
United States Courthouse
300 Quarropas Street
White Plains, NY 10601

        Re:    <u>United States v. Samuel Terwilliger</u>
              14 Cr. 701 (VB)

Dear Judge Briccetti:

      Sentencing in the above-referenced case is scheduled for August 4, 2015. The Government respectfully submits this letter to request that the Court impose a sentence in the applicable Guidelines' range of 235 to 293 months' imprisonment. As discussed below, the requested sentence is appropriate here given the seriousness of the defendant's offense conduct and the need to punish the defendant and protect the public from him.

**Factual Background**

A.  <u>The Offense Conduct</u>

      In August 2013, an individual (the "Reporter") advised the FBI that the Reporter, posing as a 14-year-old girl on a decoy profile, had engaged in communications with a person using the screen name "tas_128" on an Internet dating site. During those communications, "tas_128" indicated that "tas_128" wanted to engage in sexual activities with the Reporter. The FBI instructed the Reporter to advise "tas_128" that the Reporter had a young friend who would be interested in communicating with "tas_128" and provided the Reporter with an email address to provide to tas_128 for an undercover FBI agent (the "UC"). Complaint ¶ 3(a); PSR ¶ 7.

On August 16, 2013, the UC received an email from "tas_128." "Tas_128" – later identified as the defendant -- introduced himself as "Sam" and, over the course of the next few days, the defendant and the UC engaged in further communications. The defendant told the UC that he was 24 years old and suggested that they text instead of emailing. The UC told the defendant that she was 13 years old and provided a phone number for texting. Complaint ¶ 3(b); PSR ¶ 8.

Between August 19, 2013 and September 26, 2013, the defendant and the UC exchanged texts. In these texts, the defendant acknowledged his understanding that the UC was a minor, solicited graphic sexual images of the minor from the UC, and described a variety of sexual acts he wanted to engage in with the 13-year-old.

On August 19, 2013, the defendant texted, "Was wondering if i could see a pic of you." The UC transmitted a photo of a young girl who appeared to be approximately 13. The defendant responded, "You are really cute. it's a shame your [sic] so young." The UC asked "am I to yng [sic] for u" and the defendant responded, "That depends. what would you be ok with doing?" The defendant also wrote, "Well I wont lie to you. in all honesty, I want a baby." Later in the conversation, the defendant told the UC that he wanted "to ask you something important if you don't mind" and asked the UC, "Would you mind being in a threeway relationship? i am engaged and my finance is bisexual. she wants both of us to have a gf." The UC responded, "I just met u lol does she know my age? Idk I never done that bfore." The defendant wrote, "Yes and its up to you." The defendant asked, "Can I ask you for a body pic? If you don't mind." Thereafter, following the UC's request for "a pic of ur fiancé," the defendant transmitted a photo he identified as a "pic of brandi." Complaint ¶ 5; PSR ¶ 9.

During the text message communications on August 19, 2013, the defendant also asked the UC if she had "had sex before" and the UC told the defendant that she had not. The defendant told the UC that he "would be honored to give you experience." He added, "If you would allow me to. i have never had the pleasure of being with a woman that wasn't experienced." He told the UC, "i think I could pleasure you the right way." Complaint ¶ 6.

In communications on August 22, 2013, the defendant told the UC that his fiancé was "here with me, but I think it would be more fun with you here too." The defendant asked, "Can I ask

if you want to join brandi and my relationship for the long haul?" The defendant told the UC that he thought "you would fit in with us" and asked the UC, "Do you think you would be ready to be a mom?" The UC wrote back, "I'm only 13!" and added, "Plus u would get busted wouldn't u?" The defendant wrote, "yeah. If anything is said now to anyone we would get in trouble." Complaint ¶ 7. That same day, a few hours later, the defendant wrote, "I wish I could see your naked body hun." He asked, "Would you mind me seeing your naked body" and repeated "Id [sic] really like to see your body baby." The UC asked, "What do u want me to send u?" The defendant replied, "a body pic plz and pic of your pussy pretty plz hun." In further communications on subsequent days, the defendant made additional requests for photos. Complaint ¶ 8.

On August 26, 2013, the defendant told the UC that he wanted to "play with" her "boobs" and "suck on them." He also told the UC, "Id like to kiss you and slide my hard cock into your pussy" and asked, "Have you ever given a blowjob?" and "would you mind trying it[?]" The defendant stated that his penis was "about 7 inches long and about 1 inch thick." During the communications, the defendant asked if the UC would mind if he did not wear a condom and spoke again about the UC having a baby. The defendant told the UC that he and Brandi "have 5 kids. 4 boys 1 girl. We want another girl." The defendant told the UC, "We have been trying to find a woman for a year now that would join our relationship." Complaint ¶ 9.

In communications on September 9, 2013, the defendant spoke about the UC coming to visit him and asked, "Would you let me pleasure you fully and finish in you baby?" When the UC asked "what does that mean," the defendant said, "It means that I would like to make you orgasm with my penis inside you and me ejaculating in your pussy." Complaint at ¶ 10.

On April 10, 2014, the FBI executed a search warrant at the defendant's residence. The defendant admitted that he had engaged in sexually-explicit conversations with a girl whom he believed to be approximately 13 years old. He also admitted that, at the time he was communicating with her, he planned to bring her to stay with him and his girlfriend because he wanted to have sex with her and impregnate her. PSR ¶ 10. The defendant stated that he had prepared for the girl to visit him by cleaning out a room in his house and that he and his girlfriend had discussed adding the girl to their account for public benefits. The defendant said that, because she was underage, he would have to take guardianship of her. PSR ¶ 10.

Case 7:14-cr-00701-VB   Document 23   Filed 08/04/15   Page 4 of 11

Page 4

In addition, on April 10, 2014, the defendant also admitted that, on an occasion in October 2013, he and his girlfriend engaged in sexual activities with a 15-year old girl. He said that, among other things, his girlfriend kissed and fondled the girl and the defendant had sexual intercourse with the girl while his girlfriend watched. Then, the defendant and his girlfriend had sexual intercourse in the presence of the girl.

B.  The Information & Terwilliger's Guilty Plea

Superseding Information S1 14 Cr. 701 (VB) charged Terwilliger in one count. The Information charged that Terwilliger knowingly attempted to persuade, induce, and entice a minor to engage in sexual activity for which a person can be charged with a criminal offense, in violation of Title 18, United States Code, Section 2422(b).

On October 22, 2014, Terwilliger appeared before Magistrate Judge Lisa Margaret Smith and pled guilty to the Superseding Information pursuant to a plea agreement (the "Plea Agreement") with the Government.

Pursuant to the Plea Agreement, the parties agreed that § 2G1.3 is applicable to the offense and yields a base offense of 28. The Plea Agreement provided that two levels are added pursuant to § 2G1.3(b)(3) because the offense involved the use of a computer to persuade, induce, entice, coerce, or facilitate the travel of the minor to engage in prohibited sexual conduct. The Plea Agreement provided that, based on the above, the resulting offense level would be 30. However, § 2G1.3(c) instructs that, if the offense involved causing, transporting, permitting, or offering or seeing by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, then § 2G2.1 applies, if the resulting offense level is greater than that otherwise determined. The Plea Agreement provided that, pursuant to § 2G2.1, the offense level was 36, which is greater than 30.

The Plea Agreement contemplated a three-level reduction for acceptance of responsibility. The Plea Agreement also provided that the defendant is a "Repeat and Dangerous Sex Offender Against Minors" pursuant to § 4B1.5. The Plea Agreement explained that § 4B1.5 provides that, in any case in which the instant offense is a covered sex crime, neither

§ 4B1.1 nor § 4B1.5(a) applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct, five levels shall be added to the otherwise applicable offense level. Accordingly, the Plea Agreement found a total offense level of 38.

The Plea Agreement also provided that the defendant has no criminal history points and is in Criminal History Category I. Thus, the Plea Agreement concluded that, given Terwilliger's offense level of 38 and his Criminal History Category of I, his Guidelines range was 235 months to 293, with a mandatory minimum of 120 months.

C.   The Presentence Report

On or about March 23, 2014, the Probation Office issued a Presentence Report ("PSR"). Consistent with the Government's Plea Agreement, the Probation Office determined that Terwilliger's offense level is 38, his Criminal History Category is I, and his Guidelines range is 235 months to 293 months' imprisonment.

The PSR recommends a sentence of 235 months. (PSR at p. 22). In making this recommendation, the PSR underscores the seriousness of the offense and the high likelihood of recidivism. The PSR provides, "While it appears that no custodial sentence will alleviate this defendant's troubled psyche, we believe that sentencing concerns in this case must focus on punishment for the instant offense and protection of society, with the latter concern carrying the heavier weight." (PSR at p. 24).

D.   The Psychosexual Risk Evaluation

Dr. N.G. Berrill conducted a psychosexual risk evaluation of Terwilliger and prepared a report ("Report") concerning his findings.

The Report recounts that Terwilliger reported that he had engaged in a "sexual dialogue" with a minor: "He indicated that he sent a photo of his penis to the alleged minor and talked about sex with her, particularly, the type of sex he likes to have and the kind of sex the two would `enjoy' when they eventually got together.'" Report at 3. According to the Report, Terwilliger said that he engaged in the dialogue with the minor because "he was looking to find a second female to include (sexually) in his relationship with his fiancée,

pointing out that she is bisexual and that the two were interested in `swinging.'" Report at 4. The Report reveals that Terwilliger initially reported to Dr. Berrill "that he was unsure as to whether or not the 13-year-old was actually an adolescent or an adult." Report at 4. Later, he "amended his earlier statement by indicating that he never believed that the `minor' was actually 13-years-old." Report at 7. Terwilliger also said that he was "essentially `high,' when he was chatting with the putative minor and reiterated that his use of drugs clouded or impaired his judgment with respect to this instant offense." Report at 8.

The Report indicates that Terwilliger "reported that while he knows that this type of relationship is illegal, he could not fully articulate a reason why he would not move forward and have such a relationship." Report at 11. According to the Report, "In fact, he reported that depending on the maturity of a 13-year-old, he could see a situation where a person of this age might be able to enter into a relationship with a man in his twenties or thirties." Report at 11. According to the Report, Terwilliger "equivocat[ed] with respect to the appropriateness of an adult having sex with a 13-year-old, stating that this type of relationship might be okay if, in fact, the 13-year-old was a `mature' 13-year-old." Report at 12.

In the section entitled, "Mental Status Examination," the Report indicates that Terwilliger "impresses as functioning in the low-average range of intelligence; insight and judgment are viewed as poor." Report at 8. With respect to "Personality/Psychopathology," the Report discusses "the presence of permeable ego boundaries, repetitive social confusion and social perplexities, resulting in haphazard experiences of depersonalization and derealization." Report at 9. Further, the report describes his "indifference to the actions and feelings of others, as evidenced in his few close relationships, minimal `human interests' and limited personal involvement in work or family settings." Report at 9.

Dr. Berrill concludes that Terwilliger suffers from an "anxiety disorder, as well as a substance abuse disorder," "presents with prominent antisocial personality features," and is "principally, sexually attracted to adolescent females." Report at 11. According to Dr. Berrill, "Given the results of this evaluation, it is apparent that Mr. Terwilliger is a troubled individual." Report at 12. Dr. Berrill explains, "Based on the quality of his thinking and reasoning, Mr. Terwilliger presents as someone who engages in distorted

thinking with respect to his sexual behavior." Report at 12. Dr. Berrill recognizes that Terwilliger "has a long history of behavioral problems and by his own report, has been acting out and behaving in an antisocial manner since he was a child." Report at 12. Dr. Berrill underscores that "it seems as though Mr. Terwilliger entertained plans to have this supposed teenaged girl join him and his fiancé in a threesome" and that Terwilliger "did not seem to appreciate the inappropriate nature of this arrangement." Report at 12.

## ARGUMENT

### A Guidelines Sentence Is Appropriate Here

The Government requests that the Court impose a sentence in the Guidelines range of 235 to 293 months' imprisonment. The requested sentence is appropriate here given the seriousness of the defendant's offense conduct and the need to punish the defendant for his conduct and protect the public from him.

Although the Sentencing Guidelines no longer play a mandatory role at sentencing, they continue to play a critical role in trying to achieve the "basic aim" that Congress tried to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." United States v. Booker, 543 U.S. 220, 252 (2005). In furtherance of that goal, judges are required to "consider the Guidelines `sentencing range established for... the applicable category of offense committed by the applicable category of defendant,' § 3553(a)(4), the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims, §§ 3553(a)(1), (3), (5)-(7) (main ed. and Supp. 2004)." 543 U.S. at 259-60.

In sentencing defendants, district courts must consider not only the Guidelines but also the other factors set forth in Section 3553(a). Section 3553(a) provides that the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations that district courts must take into account at sentencing: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and

to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines]; (5) any pertinent policy statement [issued by the Sentencing Commission]; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

Here, a sentence within the Guidelines range of 235 to 293 months' imprisonment cannot be considered "greater than necessary" to achieve the goals of sentencing. Terwilliger's criminal conduct was extremely serious. He attempted to engage in sexual activities with a girl who he believed was a 13-year-old. In his communications with the UC, Terwilliger repeatedly requested that she take sexually-explicit photographs of herself and send them to him. He discussed the sexual acts he wanted to perform on her, and he intended to have the girl join him and his fiancée in a live-in sexual relationship that would involve the 13-year-old girl's impregnation. A lengthy prison sentence will punish Terwilliger for the instant serious offense and will protect the public from him while he is incarcerated.

Significantly, the communications with the UC were not Terwilliger's first efforts to find a young girl online. The FBI initiated the case after an individual (the "Reporter") advised the FBI that "tas_128" (Terwilliger) had engaged in communications with the Reporter, who was posing as a 14-year-old girl, in which Terwilliger indicated that he wanted to engage in sexual activities with the 14-year-old girl.

Moreover, even more alarming than Terwilliger's prior online efforts to lure a child to his home for sex is the fact that the instant offense occurred after Terwilliger had already sexually-abused another minor - a 15-year-old girl. As Terwilliger admitted in his post-arrest statement, he engaged in sexual intercourse with a 15-year-old girl as part of a three-way course of conduct with his fiancé. The instant offense must, of course, be viewed against the backdrop of this prior sexual abuse. Given his history, there can be little doubt as to the seriousness of Terwilliger's online trolling for another young victim. A sentence within the Guidelines range will punish

Terwilliger and will protect the public from him while he is incarcerated.

In sentencing Terwilliger, this Court should also consider Terwilliger's unwillingness – and/or inability -- to accept responsibility for his conduct. When questioned by the FBI after his arrest, Terwilliger admitted that he believed he was communicating with a 13-year-old and he admitted that he planned to bring that 13-year-old to stay with him and his girlfriend because he wanted to have sex with her and impregnate her. PSR ¶ 10. On October 22, 2014, he pled guilty, again acknowledging that he believed he was communicating with a minor and that he intended to engage in sexual activity with her. Notwithstanding these admissions, Terwilliger, inexplicably, told Dr. Berrill that he "never believed that the `minor' was actually 13-years-old." Report at 7. Terwilliger also does not appear to appreciate the import of his criminal conduct. The Report provides, "With respect to whether or not it might be okay for a 13-year-old to have sex with an adult, perhaps someone in their twenties or thirties," Terwilliger stated, "It depends on the maturity of the girl." Report at 8. Thus, Dr. Berrill concluded that Terwilliger "did not seem to appreciate the inappropriate nature" of his plans with respect to the girl. Report at 12.

Terwilliger's failure to appreciate the significance of his offense conduct and his post-plea failure to accept responsibility do not bode well for the possibility of his rehabilitation. In addition, Terwilliger's failure to appreciate the inappropriate nature of his plans with the 13-year-old girl, coupled with the Report's conclusions that Terwilliger's primary sexual attraction is for adolescent females and that he "presents with prominent antisocial personality features," (Report at 11) speaks volumes concerning his dangerousness and the need for a sentence that will protect the public.

Counsel's request for a 120-month sentence should be rejected. Under the circumstances presented here, a sentence within the Guidelines range of 235 to 293 months' imprisonment cannot be considered greater than necessary. Counsel's argument that the Court should reject the Guidelines on grounds that they are not based on "empirical data" or "national experience" (see Def. Ltr. at 2-3) misses the mark. U.S.S.G. §§ 2G1.3 and 2G2.1 work hand-in-hand with the underlying statutes. The Sentencing Commission increased the offense levels when Congress increased the mandatory minimum terms of imprisonment applicable to the

underlying statutes. This adjustment was not inconsistent with the Commission's "characteristic institutional role." See Def. Ltr. at 3. Obviously, it would make little sense if the Guidelines resulted in a sentence made moot by the mandatory minimums. Further, the enhancements in §§ 2G1.3 and 2G2.1 differentiate, reasonably and rationally, between offenders in terms of dangerousness and seriousness. Each enhancement does not apply to every defendant nor do most defendants qualify for every enhancement. Thus, for example, the Guidelines punish a defendant whose offense involved a child under 12 more severely than a defendant whose offense involved a child over 12. The Guidelines punish a defendant who actually engages in sexual activity with a minor more severely than they punish a defendant who does not actually abuse a child. And, the cross-reference in § 2G1.3 to § 2G2.1 insures that a defendant whose offense conduct involved the more serious offense conduct of seeking to cause a minor to engage in sexually-explicit activity for the purpose of producing a visual depiction of such conduct will be punished more severely than a defendant who merely enticed a minor to engage in sexual activity.[1]

Counsel's discussion of the purported "unfair[ness]" of U.S.S.G. § 4B1.5 – on grounds that it was the result of a "Congressional directive" -- also requires rejection. Congress's directive to the Sentencing Commission in the Protection of Children from Sexual Predators Act of 1998, Pub. L. 105-314, was general; Congress did not dictate the content of § 4B1.5, but rather simply directed the Sentencing Commission to increase penalties applicable to offenses where the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor. The concept that repeat offenders should be punished more severely is understandable and rational. Further, this Court should reject counsel's additional contention that § 4B1.5 "double-punish[es] (Def. Ltr. at 3) the defendant. Terwilliger's prior conduct provides important information concerning the nature and characteristics of the

---

[1] Counsel complains that the "use of a computer enhancement applies twice in calculating the guidelines – once before and once after application of a § 2G1.3 cross reference." (Defense Ltr. at 3). Counsel is mistaken. There is no double-counting. The cross-reference in § 2G1.3 instructs that, if applicable, § 2G2.1 should be applied if it results in a greater offense level than § 2G1.3. While both § 2G1.3 and § 2G2.1 contain an enhancement for the use of a computer, the enhancement only affects the resulting offense level once.

defendant and the import of his offense conduct, and it appropriately impacts upon the defendant's Guidelines range. Moreover, if Terwilliger is, at a later date, convicted and sentenced in a state court proceeding for his sexual abuse of the 15-year-old minor, he can, of course, request that any state sentence run concurrently with his federal sentence.

### Conclusion

For the foregoing reasons, the Government respectfully requests that the Court impose a sentence in the applicable Guidelines' range of 235 to 293 months. As discussed above, the requested sentence is appropriate here and is warranted given the seriousness of the defendant's offense conduct and the need to punish Terwilliger and protect the public from him. The requested sentence will provide a just punishment for Terwilliger and will help protect the public from a dangerous offender. In addition, the requested sentence will send a strong message of deterrence to all others who seek to prey on the most defenseless and vulnerable members of our community – our children.

Dated:     White Plains, New York
           July 30, 2015

                                    Respectfully submitted,

                                    PREET BHARARA
                                    United States Attorney

                              By:   _____
                                    Marcia S. Cohen
                                    Assistant United States Attorney
                                    (914) 993-1902

cc: Jason Ser, Esq.