1584TERmsS                    Sentence

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          14 Cr. 701(VB)
                                                Sentence
5    SAMUEL TERWILLIGER,

6                   Defendant.

7    ------------------------------x

8                                          White Plains, New York
                                           August 4, 2015
9                                          2:10 p.m.

10   Before:

11              THE HONORABLE VINCENT L. BRICCETTI,

12                                         District  Judge

13                         APPEARANCES

14
     PREET BHARARA
15        United States Attorney for the
          Southern District of New York
16   MARCIA SUE COHEN
          Assistant United States Attorney
17

18   JASON I. SER
          Attorney for Defendant
19

20   Also Present:  JESSICA MILLER
                     Special Agent, FBI
21

22                   DANA KRAUSHER
                     Paralegal, Federal Defenders
23

24

25

                    MARY M. STATEN, CSR, RPR, RMR
                         (914) 390-4027

1          THE DEPUTY CLERK:  United States of America against

2   Samuel Terwilliger.

3          Will counsel please note their appearance for the

4   record.

5          MS. COHEN:  Marcia Cohen for the government.

6          With me at counsel table is Special Agent Jessica

7   Miller of the FBI.

8          THE COURT:  Good afternoon.

9          MR. SER:  Good afternoon, your Honor.

10         Jason Ser, Federal Defenders, for Mr. Terwilliger, who

11  is present.

12         And along with me is Dana Krausher of my office.

13         THE COURT:  Okay.  Good afternoon, everybody.

14         Have a seat, please.

15         This matter is on for sentencing today, the defendant

16  having pleaded guilty to attempting to entice a minor to engage

17  in sexual activity, in violation of 18 United States Code

18  Section 2422(e).

19         I reviewed the following materials in preparation for

20  sentencing:  A revised presentence report dated April 30th,

21  2015, prepared by Probation Officer Susan P. Matthews; plea

22  agreement dated October 22nd, 2014; defense counsel's

23  sentencing memorandum dated July 28, 2015, as well as letters

24  and materials attached thereto, including a letter from the

25  defendant.  Mr. Ser also submitted a letter to me today,

1    August 4th, attaching a letter from Dr. Alexander Bardey.  I've

2    reviewed that, as well.

3              MR. SER:  My apologies on that, your Honor.

4              THE COURT:  Don't worry about that.

5              I've also reviewed the government's sentencing letter

6    dated July 30th, 2015, and an additional letter from the

7    government, also dated July 30th, 2015, correcting one aspect

8    of its principal sentencing letter.

9              I've also reviewed the psychosexual evaluation

10   prepared by Dr. M. G. Berrill, which was prepared for the

11   Probation Office.  And that's dated March 20th, 2015.

12             Has anything else been submitted that I failed to

13   mention?

14             Ms. Cohen?

15             MS. COHEN:  Not that I'm aware of.

16             THE COURT:  Mr. Ser?

17             MR. SER:  No, your Honor.

18             Thank you.

19             THE COURT:  All right.  Mr. Ser, have you read the

20   presentence report and discussed it with your client?

21             MR. SER:  Yes, your Honor.

22             THE COURT:  Mr. Terwilliger, have you read the

23   presentence report?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Have you discussed it with your attorney?

1            THE DEFENDANT:  Yes.

2            THE COURT:  And, Ms. Cohen, have you read the

3    presentence report?

4            MS. COHEN:  Yes.

5            THE COURT:  The presentence report calculates the

6    sentencing range as follows:  The base offense level is 32.

7    That's guideline Section 2G2.1(a).  There's a two-level upward

8    adjustment because the offense involved a minor between the

9    ages of 12 and 16 years of age.  That's 2G2.1(b)(1).  Two-level

10   upward adjustment for use of a computer.  That's 2G2.1(b)(6).

11   And a five-level upward adjustment based on a pattern of

12   activity involving prohibited sexual conduct.  That's

13   Section 4B1.5.  That adds up to 41 as the -- 41 is the offense

14   level, minus three levels off for acceptance of responsibility,

15   such that the final offense level is 38.  The Criminal History

16   Category is I, based on zero criminal history points.  And

17   therefore, according to the presentence report, the sentencing

18   range is 235 to 293 months' imprisonment, with a mandatory

19   minimum of 120 months.  And his supervised release range is

20   five years to life.  The fine range is $25,000 to $250,000, all

21   according to the PSR.

22           Does the government have any objection to the factual

23   statements in the PSR?

24           MS. COHEN:  Your Honor, I realized that there is --

25   actually, in Paragraph 3, there's a reference to the

1    defendant's plea before Judge Smith on October 22nd.  And in

2    fact, the defendant's plea was before the Court on

3    October 28th.

4           THE COURT:  Well, Judge Smith is also the Court.  But

5    yes, you mean it was in front of me.

6           MS. COHEN:  Yes.

7           THE COURT:  And it was in front of me.  And I note

8    that, but that's not a problem.  I think you said that in your

9    letter, as well.

10          MS. COHEN:  I actually repeated the information in the

11   PSR, and didn't realize until --

12          THE COURT:  Well, in fact, I took the plea.  That's

13   correct.

14          Other than that, are there any objections to any

15   factual statements in the PSR in front of me?

16          MS. COHEN:  No.

17          THE COURT:  Does the defendant have any objections to

18   the factual statements in the PSR?

19          MR. SER:  No, your Honor.

20          THE COURT:  Okay.  There being no dispute as to the

21   facts, the Court adopts the factual statements in the PSR as

22   the Court's own findings of fact for purposes of sentencing.

23          Does the government have any other objections to the

24   PSR or its guidelines calculation?

25          MS. COHEN:  No.

1          THE COURT:   Does the defendant have any other

2    objections to the PSR or its guidelines calculation?

3          MR. SER:  No, your Honor.

4          THE COURT:  Based on the parties' agreement as set

5    forth in their plea agreement, as well as my review of the

6    presentence report and my own evaluation of the guidelines, I

7    adopt the guidelines calculation in the presentence report, and

8    conclude that the final offense level is 38, Criminal History

9    Category I, which yields a sentencing range of 235 to 293

10    months' imprisonment.  There has been no motion for any

11    guidelines-based departure from the applicable range.

12          Ms. Cohen, does the government wish to be heard on

13    sentencing?

14          MS. COHEN:  Very briefly.

15          Your Honor, the government requests that the Court

16    impose a sentence in the guideline range of 235 to 293 months

17    for all the reasons in our submission.  It is our view that the

18    requested sentence is appropriate here, in light of the

19    seriousness of the defendant's offense, as well as the need to

20    punish the defendant, and also the need to protect the public

21    from him.

22          THE COURT:  Okay.  Thank you, Ms. Cohen.

23          Mr. Ser, do you wish to be heard?

24          MR. SER:  Just briefly, your Honor.

25          I wanted to point out that Mr. Terwilliger has some

1   family members in the court to your Honor's right in the first

2   pew.  So he has, fortunately, some family and community

3   support.  One of them is his ex-wife who he remains close with,

4   as well as his mother.

5        This is a very difficult case; in particular, given

6   Mr. Terwilliger's tragic childhood history, which I've outlined

7   in great detail.

8        The only thing I would note is, he grew up in a very,

9   very serious mental health history.

10       I understand the government's concerned about

11  dangerousness.  However, I think the Court needs to consider

12  prioritizing treatment for Mr. Terwilliger.  It's clear that

13  the issues he dealt with, which were well documented, when he

14  was a young child, according to studies, can morph, and did, in

15  fact, morph, into the personality disorder he now suffers from,

16  according to Dr. Berrill.  Dr. Bardey, as well as studies I've

17  cited, have indicated that there is treatment that's available

18  that could be successful for Mr. Terwilliger in the future.

19       Personality disorder is something that can be fixed

20  with various modalities.  And so what I would ask the Court to

21  consider doing --

22       And ten years minimum is a very, very lengthy time of

23  time in custody for someone like Mr. Terwilliger with no

24  criminal history, never having before been in custody and

25  having to be in custody with the history he has.  It will be a

1   very difficult period of time, regardless of the length.  But

2   ten years is a very serious sentence, especially for a

3   first-time offender.

4           And I think what needs to be done is, he needs

5   significant and long-term treatment post-release once out of

6   custody, regardless of what that sentence might be.  But I

7   think prioritizing under 3553(a)(2)(d) his future psychological

8   treatment, as opposed to enlarging a term of punishment to what

9   the government is requesting, I think we need to prioritize the

10  treatment.  I guess that's the point I'm making.

11          So I've briefed everything in extreme detail.  Unless

12  your Honor has particular questions, I'm prepared to submit on

13  my letter.

14          THE COURT:  All right.  Thank you, Mr. Ser.

15          Before I ask Mr. Terwilliger if he has anything to

16  say, your initial submission, you wanted to have it filed under

17  seal.  Is that correct?

18          MR. SER:  Please, your Honor.

19          THE COURT:  The personal nature of so much of the

20  material contained therein.  And I assume that's true with your

21  letter from today, as well?

22          MR. SER:  Please, your Honor.

23          THE COURT:  The government's letters are not on the

24  docket.  Were you planning to file them on the docket?  Or

25  should I just have them docketed?

1        MS. COHEN:  You know, actually, I held off on that,

2    because I saw that Mr. Ser had asked for the sealing.

3        THE COURT:  Well, I'm not sure that you're saying --

4        MS. COHEN:  I don't think there's anything that needs

5    to be under seal in the government's letter.

6        THE COURT:  The thing is, Mr. Ser's submissions

7    include all these reports and social services reports and

8    doctor's reports and all these things that are sort of beyond

9    the scope of just legal argument.  Whereas, the government's

10   submissions amount to legal argument.  And I think that the

11   government's -- both the government's letters should be -- you

12   should docket both of them under seal.

13       MS. COHEN:  Will do, your Honor.

14       THE COURT:  All right.  Thank you for doing that.

15       Okay.  Mr. Terwilliger, do you have anything you'd

16   like to say or anything information you'd like to present

17   before I impose sentence?

18       THE DEFENDANT:  No, your Honor.

19       THE COURT:  Okay.  You can have a seat, then.

20       All right.  Well, let me say first, that in deciding

21   the appropriate sentence in this case, I've considered all of

22   the statutory factors set forth in Title 18, United States

23   Code, Section 3553(a).  And having done so and for the reasons

24   that I will put on the record in a moment, I believe that a

25   sentence of 144 months' imprisonment, which is 12 years, to be

1    followed by 5 years of supervised release, is sufficient, but

2    not greater than necessary, to comply with the purposes of

3    sentencing set forth in the statute.

4             This is a very serious offense warranting a very

5    serious sentence.  I've said this many times before, but the

6    single most important thing to me in sentencing is:  What did

7    the defendant do?  I am always interested in other aspects of

8    sentencing, such as prior criminal record and the personal

9    history of the defendant, and all of the other matters that are

10   referred to in Section 3553(a).  But the most important factor

11   is:  What did the defendant do?

12            And here, what the defendant did was engage in a

13   concerted effort to persuade someone that he believed to be a

14   13-year-old girl to come live with him and to have his baby.

15   The girl turned out actually to be an undercover FBI agent, but

16   he certainly thought it was a 13-year-old girl.  He repeatedly

17   "solicited" the girl -- I put that word in quotes -- to send

18   him pictures of her naked body.  He also graphically described

19   various sex acts he wanted to engage in with the girl,

20   including sex acts involving the defendant and his girlfriend.

21            When the defendant was confronted about this, he

22   admitted engaging in these sexually explicit conversations.  He

23   also admitted that on one occasion in October of 2013, which

24   was actually after the conversations with the undercover had

25   ended, that he had engaged in sexual intercourse with a

1   15-year-old girl while his girlfriend watched.

2          Having said that, the sentence recommended by the

3   guidelines, 235 to 293 months, or roughly 19 and a half to 24

4   and a half years, is unreasonably excessive.  The sentence in

5   the approximately 20-, 25-year range for a sex crime, in my

6   view, should be reserved for the worst offenders, and that does

7   not include Mr. Terwilliger.

8          For example, someone who has committed a forcible rape

9   or other violent sex crime or series of sex crimes, or someone

10  who has prior convictions for sex crimes:  That's the kind of

11  person that a sentence in the 20- to 25-year range -- that's

12  the kind of person for whom a sentence in the 20- to 25-year

13  range may be appropriate.

14         But that's not the case here.  The defendant did not

15  actually engage in sexual activities with the 13-year-old.  He

16  wanted to do so, but fortunately, that never came to pass.

17         He has no prior convictions.  This is his first

18  arrest.  He did admit to having sex with a 15-year-old, which

19  is certainly a criminal act.  But there is no indication that

20  it involved force or violence.  Indeed, I'm advised by

21  Mr. Ser -- and the government did not take issue with this --

22  that Mr. Terwilliger was charged with rape in the third degree,

23  often referred to as "statutory rape," in state court in

24  Sullivan County.  And that offense does not have as an element

25  the element of force or violence.  It's simply someone who's

1    over 21 years of age having sexual intercourse with someone

2    under age 17.  In any event, that's what he's charged with,

3    with respect to that act.

4              The parties have stipulated to the advisory guidelines

5    range, and I found that that is the applicable range.  However,

6    there are a number of aspects of the applicable guidelines

7    enhancements that, to a large extent, artificially inflate the

8    range here.

9              First of all, there's the two-level enhancement for

10   use of a computer.  Almost by definition, the enticement

11   offense requires the use of a computer.  And certainly, in my

12   experience, the vast majority of people charged with this

13   offense use a computer.  So that two-level enhancement seems

14   somewhat redundant.

15             But that's the least of it.  The other things are that

16   the defendant's attempt to obtain a visual depiction of a

17   13-year-old engaged in sexually explicit conduct caused the

18   otherwise applicable final offense level of 30, under Guideline

19   Section 2G1.3, to become 36 under 2G2.1.  Of course, that's

20   before three levels off for acceptance.  But as I understand

21   it, the base offense level here under 2G1.3 is 28.  Two levels

22   are added for use of the computer, which puts you at level 30.

23   Unless the defendant attempted to obtain a visual depiction of

24   a minor engaged in sexually explicit conduct, in which case

25   2G2.1 applies, and if the final offense level calculated under

1    2G2.1 exceeds that calculated under 2G1.3, then 2G2.1 applies.

2          When you do that here, you start out at Level 32.

3    There's a two-level enhancement for use of a computer.  There's

4    another two-level enhancement for the fact that the minor -- or

5    in this case, the person that the defendant believed to be a

6    minor -- was between the ages of 12 and 16.  So you end up at

7    Level 36.  So effectively, there's a six-level difference

8    because of the attempt to obtain a visual depiction of a minor

9    engaged in sexually explicit conduct.

10          This is a correct application of the guidelines as

11   they are written.  But in fact, here, no minor ever engaged in

12   sexually explicit conduct to produce a visual depiction of such

13   conduct.  That never happened.  And it could not have happened,

14   because the person that the defendant believed was a minor was,

15   in fact, an undercover FBI agent.

16          So the six-level increase -- it's not all at once, but

17   the six-level difference, meaning Level 36 as opposed to

18   Level 30, that's the correct calculation of the guidelines, but

19   given that there was no minor involved in this, there was no

20   visual depiction obtained, nor could it ever have been

21   obtained, my view is that this six-level enhancement is not

22   quite the right word, but the fact that the guidelines end up

23   being six levels higher than they otherwise would be tends to

24   overstate the seriousness of the offense.

25          And finally, although the five-level upward adjustment

1   for engaging in a pattern of activity involving prohibited

2   sexual conduct applies, again, under the circumstances here,

3   this adjustment tends to overstate the seriousness of the

4   defendant's conduct.  After all, the title of Section 4B1.5 is,

5   quote, "Repeat and Dangerous Sex Offender Against Minors," end

6   quote.  But here, the defendant has actually engaged in only

7   one criminal sex act with an actual minor, the 15 year old in

8   October 2013, and he hasn't been convicted of that.

9           The other occasion of prohibited sexual conduct that

10  would be considered under 4B1.5 is, of course, the offense of

11  conviction, and that offense was an effort to persuade what

12  turned out to be an undercover FBI agent to engage in sex.

13          Again, don't get me wrong.  I am not finding that

14  these enhancements do not apply.  They do apply.  But they

15  really do not quite fit the actual conduct at issue here,

16  which, again, is an attempted enticement, combined with a

17  single other, but not prior, occasion of sex with a minor,

18  without any indication that the other engagement involved force

19  or violence, and where the defendant has not been convicted of

20  a crime in connection therewith.

21          As I said a moment ago, the charge that the defendant

22  faces in connection with that October 2013 incident is

23  statutory rape.  And under New York law, the sentence for such

24  an offense, if he's convicted of that, is between one and a

25  half and four years.  Here, the impact of that conduct is to

1    raise the offense level by five levels.  In other words, if you

2    add Level 36 minus three for acceptance, you end up at

3    Level 33.  A hundred thirty-five months is the bottom of that

4    range in Criminal History Category I.  If you add five levels

5    and you end up with Level 38, 235 months is the bottom of the

6    range.  That's a hundred-month difference, and a difference of

7    about eight and a half years.  So a crime which under New York

8    law would carry a maximum sentence of four years' imprisonment

9    and a minimum sentence of one and a half years has the effect

10   of increasing the guideline range in this case by eight and a

11   half years.  And that just strikes me as plainly unreasonable.

12            The other reason why it's unreasonable is that that

13   other offense, the one in October 2013, he hasn't even been

14   convicted of that.  But let's assume that he was convicted of

15   that.  Still, the effect of that criminal episode here is an

16   eight-and-a-half year increase in the guideline range, which

17   strikes me as unreasonable, considering that the maximum

18   sentence for that offense would be four years' imprisonment.

19            Now, I do believe that the enhancements under 2G2.1

20   and 4B1.5 should raise the defendant's guideline range above

21   what would otherwise be the applicable range.  And if you go

22   back to 2G1.3 where we started, the final offense level would

23   be 27.  If he started at 28, added two for computer usage,

24   subtracted three for acceptance of responsibility, you'd end up

25   with 27.

1       When the enhancements under 2G2.1 and 4B1.5 are

2   factored in, then the guideline range is not 27, but rather 38,

3   which is an 11-level increase, which is a dramatic increase.

4   And there should be an increase.  And I certainly agree that

5   there should be an increase.  At Level 27, the guideline range

6   is 70 to 87 months.  Of course, here, the minimum would be 120

7   months.  But Level 27 is 70 to 87 months.  Level 38 is the

8   aforementioned 235 to 293 months.  So that's about what?  A

9   roughly 14-year difference, which is a really big difference.

10      And even if you assume that the otherwise applicable

11  range is 120 months, which I think is correct, because this is

12  a mandatory minimum case, still, those enhancements take the

13  case from 120-month range up to the -- basically, they double,

14  and that makes it 235 months.  So it's roughly a ten-year

15  increase.

16      And again, I just think that that magnitude of

17  increase, based on these enhancements which do apply, is not

18  reasonable under the particular circumstances of this case.

19  There should be an increase, but it should be a reasonable

20  increase.  And in my view, the increase that would be

21  appropriate is about half of the increase that is called for by

22  the application of the guidelines.  In other words, instead of

23  increasing it by eleven levels, I think a six-level increase

24  would be more appropriate.  And a six-level increase to

25  Level 33 would yield an advisory sentencing range of 135 to 168

1  months, which I believe is both sensible and reasonable, and

2  takes into account not only the offense of conviction, but also

3  the other incident involving the 15-year-old in October of

4  2013.

5          Now, there is another significant sentencing factor

6  here that is relevant to me in determining the ultimate

7  sentence, and that is that the defendant has a documented

8  history of emotional and mental health problems since he was a

9  small child.  There is documentary evidence that he was also

10 the victim of physical and psychological abuse since he was a

11 small child, all of which is spelled out in great detail in the

12 defendant's sentencing memorandum.  And it's also summarized in

13 Dr. Berrill's report.  So I don't need to resummarize it here.

14 I don't think there's any dispute about any of the information

15 contained in Mr. Ser's sentencing memo or in Dr. Berrill's

16 report about Mr. Terwilliger's rather unfortunate background.

17         Common sense and experience compel the conclusion that

18 the defendant's criminal acts here, including both the offense

19 of conviction and the other instance of sexual misconduct with

20 a 15-year-old, are attributable, at least to some extent, to

21 the defendant's troubled and abusive upbringing, as well as to

22 his history of emotional problems and mental illness.

23         In short, the fact is that the 235 to 293 month

24 recommended sentencing range is unreasonable, in that it

25 overstates the seriousness of the offense and the true nature

1    of the defendant's pattern of activity involving prohibited

2    sexual conduct, and also the fact that the defendant has had,

3    to say the least, a troubled background and continues to suffer

4    from emotional problems and mental illness.

5             Based on those facts, I believe that a sentence of 144

6    months is sufficient, but not greater than necessary, in this

7    case.

8             Now, I am acutely aware of the fact that while I have

9    the authority to vary from the guideline range, that the

10   greater the variance I think is appropriate, the greater the

11   rationale should be for that variance.  And here, this is a

12   significant variance, because it's from roughly 19 and a half

13   years at the bottom of the range to 12 years.  So it's roughly

14   a seven-year variance, you might say.  And I recognize that

15   that is a significant variance.  But I sincerely believe that

16   because the guidelines overstate to some extent -- I don't want

17   anybody to get the impression that I think that this is not a

18   serious crime or that I'm somehow making excuses for what

19   Mr. Terwilliger did.  I'm not doing that.  But to some extent,

20   these enhancements overstate the seriousness of his conduct.

21            He's not someone who's been repeatedly convicted of

22   sex crimes.  He has never been engaged, so far as we know, in

23   any violent or forcible rape or some other crime of violence.

24   He did solicit a visual depiction of prohibited sexual

25   activity, but he didn't get one.  And this is to be

1   distinguished from cases that I've had where defendants have

2   actually created visual depictions with minors, the visual

3   depictions of prohibited sexual activity with minors.  None of

4   that applies here.  That doesn't describe this offense at all.

5           And even when you factor in the other offense, which,

6   after all, he self-reported to the agents when he was

7   interviewed, I guess it was April 2014, that offense, as

8   well -- and he hasn't been convicted of it, but let's assume he

9   did it -- that offense, as well, does not involve force or

10  violence.

11          So I just don't think that he should be sentenced as

12  if he was a repeated violent sex offender, which I really

13  believe is the primary target of particularly the 4B1.5

14  enhancement, but even to a lesser extent, but an important

15  extent, the "visual depiction" enhancement, which is directed

16  at someone who is not only engaged in an enticement, but also

17  engaged in an effort to get a minor to engage in prohibited

18  activity, and then create a visual depiction of that activity.

19  I just think that under the circumstances here, those

20  enhancements overstate the significance of Mr. Terwilliger's

21  crime.

22          Let me just say a couple of words about the

23  government's sentencing submission.

24          First of all, I agree with the government that a

25  lengthy prison sentence is appropriate, given the seriousness

1    of the defendant's conduct, the need to impose just punishment,

2    and the need to protect the public from further crimes by the

3    defendant.

4           The 144 months, 12 years, is such a sentence.  It is

5    two years above the mandatory minimum.  It takes into account

6    the aggravating factors of soliciting a visual depiction of

7    sexually explicit conduct.  And secondly, it takes into

8    consideration the fact that the defendant engaged in sexual

9    intercourse with a 15-year-old around the same time that he was

10   attempting to entice what he thought was a 13-year-old to come

11   live with and engage in sexual acts with him.  It also takes

12   into account the fact that the defendant has no criminal

13   history, and certainly no prior sex offense arrests or

14   convictions.  It also takes into account the defendant's

15   documented history of abuse and mental illness.

16          So while I agree with the government that a lengthy

17   prison sentence is warranted, I emphatically do not agree that

18   the sentence should be in the 20- to 25-year range.

19          I also take issue -- and this is, I suppose, even what

20   I've already said about the sentence I intend to impose and

21   why, this is in the nature of dicta, I suppose.  But,

22   Ms. Cohen, I actually think you're making a mistake to use

23   Dr. Berrill's report as a sword.  What you did in your letter

24   is, you said, "According to Dr. Berrill, the defendant was

25   unwilling or unable to accept responsibility."  And you

1    referenced certain things that the defendant had said to

2    Dr. Berrill.

3            But let's remember, a report like this is prepared at

4    the direction of the Court, not the U.S. Attorney's Office.

5    It's prepared by the Court through the Probation Office to

6    determine treatment needs and an assessment of risk to the

7    community upon the defendant's release from prison.

8    Dr. Berrill's report absolutely accomplishes those purposes.

9    No question about it.  And as a result, the presentence report

10   recommends that the defendant be closely supervised upon his

11   release, that he needs counseling and mental health treatment,

12   including sex-offender-specific treatment.

13           In Dr. Bardey's letter that I received today,

14   Dr. Bardey, likewise, recommends individual and group therapy,

15   as well as psychiatric medications.

16           Secondly, Dr. Berrill's report was not done for the

17   purpose of gathering evidence to be used against the defendant

18   at sentencing.  Indeed, if the government views such reports

19   that way, and uses them that way, interprets them that way,

20   which is exactly what Ms. Cohen did in her letter, it will have

21   the effect of discouraging defendants and defense counsel from

22   agreeing to undergo such evaluations.  Again, this is an

23   evaluation recommended by Probation and ordered by the Court.

24   And it also will discourage defendants from being honest during

25   these evaluations.  And if defendants are discouraged in that

1  way from either being honest or even agreeing to undergo the

2  evaluation, that would be, to say the least, extremely

3  counterproductive.

4          The whole purpose of the report is to determine

5  treatment needs and risk assessment after the defendant is

6  released from prison.  It's not designed to discover new

7  evidence that can be used by the government at sentencing to

8  ratchet up the sentence or to otherwise support the sentencing

9  position that the government wishes to take.

10          For what it's worth, my view is that if a defendant

11  were to say -- or defense counsel were to say, "Look.  My

12  client declines to undergo such an evaluation," I would be

13  completely fine with that.  I would treat that as a nonevent.

14  I wouldn't hold it against the defendant.  Of course, there

15  might be some benefits that the defendant might get from such a

16  report.  There might be some things that an evaluator might say

17  about the defendant which actually would help the defendant at

18  sentencing.  But I certainly wouldn't hold it against a

19  defendant if the defendant or his counsel declined to undergo

20  such an evaluation.

21          And I'm very concerned that if it's the government's

22  position that this is a win-win for the government, because on

23  the one hand, it's good to find out what the defendant's

24  problems are, and in addition to that, if the defendant says

25  some things or the doctor says some things which can be used

1    against the defendant at sentencing to support the government's

2    position for a more severe sentence, well then, that's great,

3    too, the government might think.

4         I actually think that that is a perverse approach,

5    because -- I suppose that's an ironic word to use in this case,

6    but I really think it's counterproductive.  That's a better

7    word to use.  It's counterproductive, because it's going to

8    discourage people from undergoing evaluations which are in the

9    interest of the Court and the public, in terms of determining

10   what the appropriate treatment should be and what the risk

11   assessment should be for the defendant once he's released from

12   prison.

13        In any event, I don't even agree with the government

14   that the defendant was -- the government says it showed that --

15   "what he said to Dr. Berrill showed that he was unwilling or

16   unable to accept responsibility."  I think what it shows is

17   that the defendant is an extremely troubled person with a

18   serious antisocial personality disorder.  That's not the exact

19   words used by Dr. Berrill.

20        Hold on just one second.

21        (Pause)

22        THE COURT:  "Personality disorder, as well as impulse

23   control disorder."  In other words, he's a highly troubled

24   individual who doesn't understand fully the magnitude of the

25   seriousness of what he's done.  But it doesn't mean that he

1    wasn't being honest.  I think that he -- my impression of

2    Dr. Berrill's report is that he was being quite honest with

3    Dr. Berrill in admitting things which, if he didn't have these

4    mental health issues and emotional disorders and other problems

5    that he has, he almost certainly would not admit.  Most people

6    would not say --

7              You don't need to speak at this point, Ms. Cohen.

8    I'll give you an opportunity to speak.

9              As I was saying, if anything, it shows that he was

10   being honest with the doctor and not dishonest or trying to

11   hide something or minimize his conduct.  I think it shows he

12   just has no clue.  He's clueless about his conduct, which makes

13   him a dangerous person, which warrants a 12-year jail sentence,

14   which warrants extremely close supervision when he's released

15   from prison, which he eventually will be.

16             But what happened in April of 2014 when he was

17   interviewed is that he gave a full confession.  What also

18   happened is that he admitted having sex with this 15-year-old.

19   The parties don't talk about this in the papers, but I'm

20   assuming that at the time, law enforcement knew nothing about

21   that other incident.  And then, when he spoke to Dr. Berrill,

22   he seemed to be completely open and honest about the incident,

23   but completely or largely unaware of the significance of what

24   he had done.  But that's not the same as saying that he was

25   trying to minimize the significance of what he had done.  He

1    admitted guilt.  He knew that he was facing a ten-year

2    mandatory minimum sentence.  He volunteered this information

3    about the other incident with the 15-year-old.

4           So whatever problems Mr. Terwilliger has, being honest

5    about what's inside his head is not one of those.  It's just

6    that what's inside his head is screwed up, and that he needs a

7    tremendous amount of help and support and guidance and probably

8    psychiatric medication to turn his life around to the point

9    that he becomes less likely to engage in this conduct in the

10   future.

11          So as far as I'm concerned, the defendant did accept

12   responsibility for his crime, and I reject the way the

13   government has articulated -- or described, I should say, what

14   he said to Dr. Berrill according to Dr. Berrill's report.

15          Yes, Ms. Cohen.  You wanted to be heard?

16          MS. COHEN:  Your Honor, I just wanted to clarify that

17   the government's --

18          THE COURT:  Honestly, I don't think there's anything

19   that needs to be clarified, but go ahead.  You're welcome to do

20   it.

21          Go ahead.

22          MS. COHEN:  I just wanted to make plain that the

23   government's view with respect to the acceptance or the

24   inability to accept responsibility was essentially due to the

25   fact that he told Dr. Berrill that he didn't believe -- he

1    didn't think that the girl that he was talking to was 13.

2              And to the Court's point --

3              THE COURT:  Where does it say that in Dr. Berrill's

4    report?

5              MS. COHEN:  It says it on Page --

6              THE COURT:  He said he waffled about that, and then he

7    acknowledged that he thought that she was 13.

8              And by the way, he had already admitted under oath in

9    this courtroom that he believed that she was 13.  So for

10   purposes of the guilty plea, and, therefore, for the sentence,

11   there's no question that he admitted the elements of the

12   offense.

13              But go ahead.

14              MS. COHEN:  It's on Page 7.

15              The government's point is simply that this is a

16   defendant who, despite pleading guilty, then essentially denied

17   the essence of the conduct, which is --

18              THE COURT:  I don't believe that he did deny the

19   essence of the conduct.

20              What do you say about that, Mr. Ser, in terms of

21   Dr. Berrill's report?

22              MR. SER:  When it came to the 13-year-old belief, I

23   think if he waffled -- and I think his letter made clear that

24   we submitted -- he thought she might have been older, but he

25   admitted -- you know, he knew she was a minor.  That's what he

 1  || admitted in the plea colloquy.

 2  ||          I wasn't present at the interview with Dr. Berrill.

 3  || That's one of the --

 4  ||          THE COURT:  Well, he didn't know she was a minor,

 5  || because she wasn't a minor.  But he believed she was a minor.

 6  ||          MR. SER:  Correct.  Right.  And if there was an

 7  || issue --

 8  ||          THE COURT:  It turns out she was not a minor.

 9  ||          MR. SER:  Right.  But as far as the actual age goes,

10  || if he made some statements to Dr. Berrill about whether he

11  || didn't think she was 13 or not, he still thought she was a

12  || minor, based on the picture.  Could have been a teen-ager,

13  || perhaps older than 13.  That's what Mr. Terwilliger identified

14  || to me.  And I think that's what was in his letter to the Court,

15  || as well.  It's probably my best recollection of that report.  I

16  || know there was waffling.  Your Honor is right.  It was kind of

17  || inconsistent in places, but . . .

18  ||          THE COURT:  But you know, I think it reflects the fact

19  || that the defendant is a troubled individual with a real lack of

20  || insight into his own conduct, into his own behavior.  And

21  || because of that, he's now facing 12 years in prison, which is a

22  || really long time to be in prison.  And notwithstanding the fact

23  || that he didn't actually engage in a sexual relationship with

24  || the person who he believed to be a 13-year-old girl.  So the

25  || consequences of his behavior are extremely severe, and it's

1   regrettable that he does not fully appreciate that yet.  But if

2   anything, that just demonstrates what a screwed up individual

3   he is -- and that's a nontechnical term, but an individual with

4   such emotional and mental health issues that he needs an

5   enormous amount of counseling and treatment in the future.

6                Anything further on this, Ms. Cohen?

7                MS. COHEN:  No, your Honor.

8                THE COURT:  You see my point, though, Ms. Cohen.  If

9   you use a report like this as a sword, if you turn this into

10  "Aha.  And in addition, he said to the doctor the following

11  things," then what you're going to do -- and you know, you do a

12  lot of these cases.  What you're going to is to discourage

13  people like Mr. Ser and Mr. Ser's future clients from agreeing

14  to participate in one of these evaluations, because they're

15  going to say, "Look.  If anything comes up in that evaluation

16  that can be used against you, the government will jump all over

17  it."  And so that's going to discourage them from doing it.

18                And I'm telling you both right now, since both of you

19  have been in front of me on other cases and will be in front of

20  me on other cases, if you do not choose to undergo or have your

21  client undergo one of these evaluations because you feel that

22  there's a risk of that happening, that problem we're describing

23  right now, I'm not holding that against the defendant.  I'm

24  just not going to do it.

25                As far as I'm concerned, the defendant has no

1    obligation to undergo this psychosexual evaluation.  In many

2    cases, it's actually helpful to the defendant, both in terms of

3    his own mental health and also in terms of the sentence that

4    ultimately gets imposed, but not always.  And when the

5    government jumps all over what it perceives to be lack of

6    acceptance of responsibility, then it has the direct, I think,

7    counterproductive consequence of discouraging people from

8    participating, not only agreeing to do this, engage in --

9    excuse me -- not only agreeing to be evaluated, but also being

10   totally honest when evaluated.  That's the effect that it would

11   have.

12          So I'm not going to tell you how to do your job, but

13   that to me is -- that's a matter of concern to me, because this

14   is a report that I ordered.  You didn't order it.  I ordered

15   it.  And I ordered it because the Probation Officer recommended

16   it, and the defendant and the defense lawyer consented to

17   undergo the evaluation.

18          I did not order it -- it's almost as if you're using

19   my order that this evaluation occur against the defendant, and

20   I am emphatically not a member of the Executive Branch or the

21   U.S. Attorney's Office, and I do not have my orders designed

22   solely for the purpose of determining risk assessment and

23   treatment, future treatment, thrown back at me as if I was the

24   one who conducted some further investigation into the

25   defendant's background and underlying circumstances of the

1    case.  That's not what this is about.  And I don't want to

2    be --

3            The effect of what you're doing is that when I read

4    your letter, I think to myself, "Well, the prosecutor thinks

5    that I'm like an Assistant Prosecutor to the Assistant

6    Prosecutor."  And I'm not that.  Okay?  I know that it wasn't

7    your intent.  I know that you were well-intentioned in this

8    regard.  But you need to appreciate the consequences of what

9    you do.  And in my view, the consequences of what you did here

10   are bad.  And maybe the next time, Mr. Ser's client is not

11   going to undergo the evaluation, which is going to be to the

12   detriment of the government's interest and the detriment of the

13   public's interest.

14           MS. COHEN:  Your Honor, I would only say that my

15   understanding is that the evaluations are prepared because they

16   help the Court, in terms of figuring out who is this person,

17   what kind of risks do they present.  And in the same way the

18   Probation Office uses that report, the fact that you have a

19   defendant who pleads guilty, and then goes to the psychiatrist

20   or the evaluator, and says, "I didn't believe that it was a

21   13-year-old.  I never had sex with anybody who was underage."

22   And he tells you in his letter that, in fact, the reason he

23   withheld that information was because he didn't want to get in

24   trouble.  I mean, so it's not that he didn't understand or

25   didn't -- you know, he makes it clear that he knew he wasn't

1    being truthful with the evaluator.

2              I guess my point is simply that I think that the

3    evaluation, the government took issue with the fact that he

4    wasn't honest, in the sense that he denied that he believed

5    that he was talking to a minor.

6              THE COURT:  Let me ask you this question.  Why did the

7    government not bother to arrest Mr. Terwilliger or follow up

8    on -- I mean, I wasn't going to bring this up, because it

9    seemed a little bit irrelevant, but I'm bringing it up now,

10   because we are talking about, you know, the government's view

11   of something like this.  Why didn't the government pursue this

12   matter for six or eight months after this conversation ended?

13   Why was it not until April of 2014 that the government decided

14   to do a search warrant or interview the defendant?

15             MS. COHEN:  I don't have a good answer for you on

16   that.  There was a lag time with respect to when the lead came

17   in and when it was acted upon.  There's no question.  There's a

18   lot of -- you know, unfortunately, there's a lot of very worthy

19   investigations out there, and sometimes they don't move as

20   quickly as they should.

21             THE COURT:  Mr. Ser did not make the argument, which

22   he might have made, I'm not sure if it would have made anything

23   of it, but he might have made the argument that the

24   government's failure to follow up on this undercuts their

25   suggestion that the conduct that the defendant engaged in

1    warrants a 20- to 25-year sentence.  If it was that serious

2    conduct, you would think that the government would have pursued

3    it more vigorously.

4           Well, for example, let's just say, hypothetically,

5    that a victim called the police and said, "I was just violently

6    and forcibly raped by So-And-So;" in other words, the kind of

7    conduct, if true, that would warrant such a lengthy sentence,

8    particularly if that person had some prior criminal history or

9    prior sex offender history.  I'm pretty sure that the police

10   would have followed up on that pretty quickly.  They wouldn't

11   have said, "Well, we'll get to it in about six months.  We're

12   kind of busy right now.  We'll get to it.  It's just that, you

13   know, you're going to have to wait six or eight months."

14          The point being that one could make the argument -- it

15   wasn't made here, it does not play any role in the sentence

16   that I'm imposing, that if the government really -- "the

17   government," meaning the United States Attorney's Office and

18   the FBI -- if the government really believed that this case

19   warranted a 20 -- even more than that, 293 months, that's

20   nearly 25 years, that this conduct warranted a 25-year

21   sentence, then they would have pursued the matter more

22   vigorously, and they wouldn't have waited six months, during

23   which time, apparently, Mr. Terwilliger had this relationship

24   with a 15-year-old.  Perhaps if the government had followed up

25   immediately, that never would have happened.  I don't know.

1    Who knows?  One can't really say one way or the other.  But it

2    tends to undercut this notion that what he did here is worthy

3    of spending the next two or three decades in prison.

4          I think we've discussed that enough.  As I said, the

5    fact that it was not followed up on and the fact that it may

6    have given rise to this other incident that occurred with the

7    15-year-old -- in other words, the failure to confront him

8    about what the government already knew he had said, they had

9    the information.  It was all, I'm sure, recorded and

10   downloaded.  I'm not saying that that justifies a lesser

11   sentence.  I'm not.  But it does give me pause in considering

12   whether the government really honestly in its heart believes

13   that what Mr. Terwilliger did warrants 20 to 25 years in

14   prison.

15         Anyway, the bottom line is that, given the nature and

16   circumstances of the offense, the history and characteristics

17   of the defendant, the sentence I intend to impose is

18   sufficient, but not greater than necessary, to reflect the

19   seriousness of the offense, promote respect for the law, and

20   provide just punishment for the offense.  Also, it will afford

21   adequate deterrence to criminal conduct and protect the public

22   from further crimes of the defendant.

23         Does either counsel know of any legal reason why the

24   sentence should not be imposed as stated?

25         MS. COHEN:  No, your Honor.

1         MR. SER:  No, your Honor.

2         THE COURT:  Mr. Terwilliger, could you please stand?

3         It is the judgment of this Court that you be committed

4    to the custody of the United States Bureau of Prisons for a

5    total term of 144 months, to be followed by 5 years of

6    supervised release.

7         The standard conditions of supervised release 1 to 13

8    shall apply.

9         The following mandatory conditions shall also apply;

10   they're on Pages 24 to 25 of the presentence report:

11        The defendant shall not commit another federal, state

12   or local crime.

13        The defendant shall not illegally possess a controlled

14   substance.

15        The defendant shall not possess a firearm or

16   destructive device.

17        The mandatory drug testing condition is suspended, due

18   to imposition of a special condition requiring drug treatment

19   and testing.

20        And the defendant shall cooperate in the collection of

21   DNA, as directed by the Probation Officer.

22        The following special conditions shall also apply.

23        Now, actually, Mr. Ser, I want to --

24        You can have a seat, Mr. Terwilliger, for a moment,

25   because I should have brought this up earlier.

1               The proposed Special Condition Number 1 is essentially

2       home detention.  I'm not imposing home detention.  I'm imposing

3       12 years of prison.  So I'm a little bit confused by this.

4               I mean, are you objecting to this, or not objecting to

5       this?

6               MR. SER:  I will object to it at this time, your

7       Honor.

8               Generally, in the past, if I've objected to

9       conditions, I've been told by judges that it's their discretion

10      to decide what to put in.

11              I will object at this time, based upon the length of

12      the sentencing.  I think that transforms it into a lengthier

13      sentence than is needed.  I think the close supervision will be

14      more than sufficient, along with other counseling and treatment

15      your Honor has indicated you intend to order.

16              THE COURT:  Ms. Cohen, why is this Condition Number 1,

17      home confinement, something in addition to the 12 years'

18      imprisonment, an additional sort of not jail sentence, but home

19      confinement on top of that?  And that's what it seems to be.

20      It says, "You shall remain in your place of employment" --

21      excuse me -- "your place of residence, except for employment."

22      I'm just confused by that.

23              MS. COHEN:  I think it also talks about other

24      activities, as approved by the Probation Officer.  So

25      essentially, it allows for the Probation Office to be quite

1      involved in overseeing what activities --

2              THE COURT:  I have no doubt that the Probation Office

3      is going to be quite involved in overseeing the defendant's

4      activities.

5              I'm not going to impose Special Condition Number 1.  I

6      won't impose Special Condition Number 1.

7              So the special conditions that I am going to impose

8      are as follows:

9              1.  The defendant shall undergo sex-offense-specific

10     evaluation, and participate in a sex offender treatment and/or

11     mental health treatment program approved by the Probation

12     Officer.  The defendant shall abide by all rules, requirements

13     and conditions of the sex-offender-treatment programs,

14     including submission to polygraph testing.  The defendant shall

15     waive his right of confidentiality in any records for mental

16     health assessment and treatment imposed as a consequence of

17     this judgment, to allow the Probation Officer to review the

18     defendant's course of treatment and progress with the treatment

19     provider.  The defendant will be required to contribute to the

20     cost of services rendered in an amount approved by the

21     Probation Officer, based on ability to pay or availability of

22     third-party payment.

23             2.  The defendant shall not have deliberate contact

24     with any child under 17 years of age, unless approved by the

25     Probation Officer.  The defendant shall not loiter within a

1    hundred feet of schoolyards, playgrounds, arcades or other

2    places primarily used by children under the age of 17.

3              3.   The defendant shall not have contact with the

4    victims in this case.  This includes any visible, visual,

5    written or telephonic contact with such persons.  Additionally,

6    the defendant shall not directly cause or encourage anyone else

7    to have such contact with the victims.

8              And I'm going to leave it the way it is, but it's not

9    precisely clear who the victim is in this case.  The offense of

10   conviction involved an undercover agent.  But in any event,

11   I'll leave it in the way it is.

12             I'm not going to impose the search condition, which is

13   proposed Condition Number 5.  This is not a contraband case or

14   a case in which there is some concern about the defendant, you

15   know, engaging in or having contraband in his home.

16             I am going to impose the next proposed condition,

17   which I guess will be Number 4 on my list.  The defendant is

18   not to use a computer, Internet-capable device or similar

19   electronic device to access child pornography or communicate

20   with any individual or group, for the purpose of promoting

21   sexual relations with children.

22             Defendant shall consent to the use and/or installation

23   of a computer program, which shall monitor suspect computer use

24   of any computer owned or controlled by the defendant.  The

25   programs used will be designed to identify to the Probation

1    Office only the viewing, downloading, uploading, transmitting

2    or otherwise using any images or content of a sexual nature,

3    defined as "suspect computer use."  Suspect computer use shall

4    be identified by the installed programs and/or the Probation

5    Officer through the screening of the defendant's computer usage

6    for certain key words, phrases and images.

7             5.  The defendant will participate in a program

8    approved by the U.S. Probation Office, which program may

9    include testing to determine whether the defendant has reverted

10   to using drugs or alcohol.  The Court authorizes the release of

11   available drug treatment and evaluations and reports to the

12   substance abuse treatment provider, as approved by the

13   Probation Officer.  The defendant will be required to

14   contribute to the cost of services rendered, co-payment, in

15   other words a co-payment in an attempt -- excuse me -- in an

16   amount determined by the Probation Officer, based on ability to

17   pay or availability of third-party payments.

18             And finally, it is recommended that the defendant be

19   supervised by his district of residence.

20             And I state for the record that the conditions that I

21   am imposing, both the standard conditions, the mandatory

22   conditions and the special conditions, do have the effect of

23   requiring very close -- not only requiring, but authorizing

24   very close monitoring of the defendant both through his

25   involvement in the treatment program, the fact that he needs to

1   have a computer program installed on the computer that he might

2   use that could detect the use by him of anything online of a

3   sexual nature, and also that he's going to be required to

4   participate in drug treatment.

5          All right.  I find that the defendant does not have

6   the ability to pay a fine.

7          Oh, in addition -- I'm sorry -- the defendant is

8   directed to report -- this is a special condition -- directed

9   to report to the nearest Probation Office within 72 hours of

10  his release from custody.  That will be a special condition of

11  probation, as well.

12         I find the defendant does not have the ability to pay

13  a fine, and, therefore, I am not imposing a fine.

14         Restitution is not applicable here.

15         I am imposing the mandatory special assessment of

16  $100, which is due immediately.

17         The foregoing constitutes the sentence of the Court.

18         Mr. Terwilliger, you have the right to appeal your

19  sentence, subject to any limitations on that right contained in

20  your plea agreement with the government.  If you're unable to

21  pay the costs of an appeal, you may apply for leave to appeal

22  without payment of costs.  A notice of appeal must be filed

23  within 14 days after the entry of judgment.  Therefore, if you

24  do wish to appeal, you must advise your attorney to prepare and

25  file a notice of appeal immediately.  Or if you request, the

1   Clerk will immediately prepare and file a notice of appeal on

2   your behalf.

3           I don't believe there are any open counts.  Is that

4   correct?

5           MS. COHEN:  To the extent there are, the government

6   moves to dismiss.

7           THE COURT:  Well, that wasn't really my question.

8           MS. COHEN:  I know that at one point, there were

9   charges in the complaint.  There was a production charge and

10  exploitation, attempted exploitation.

11          THE COURT:  Well, the only thing I care about is the

12  information, because that's the only thing that brings this

13  matter in front of me.  And there are no open counts.  I just

14  looked at it.  It's a one-count information.

15          Any recommendations to the --

16          So your application is denied, because there's nothing

17  to dismiss.

18          Any recommendations that you'd like me to include in

19  the judgment?

20          MR. SER:  Your Honor, that he be housed as near as

21  possible to his family and home in Sullivan County.  And then,

22  although I don't think -- know, in fact, he won't be able to

23  take advantage of the early release, would your Honor recommend

24  the RDAP program so that he can begin dealing with the drug

25  issues in custody?

1        THE COURT:  I know he certainly has had drug problems

2    in the past.  That's not his principal --

3        MR. SER:  He was a long-term abuser of prescriptive

4    medications; in particular, painkillers, and marijuana.  I'm

5    more concerned about the painkillers.  But if he can get a

6    program -- and he's not going to be eligible for early release,

7    given the nature of the conviction, but he should potentially

8    be able to attend and take part in the program itself.

9        THE COURT:  All right.  The PSR does say that the

10   defendant said that he admitted that he had used marijuana from

11   the age of 16 or 17 daily up until his arrest, and that since

12   he was about 20 or 21, he began using Vicodin or Percocet every

13   day until his arrest for the instant offense.

14        So I will recommend that the defendant participate in

15   the Residential Drug Abuse Treatment Program.  Doesn't

16   guarantee that he's going to get the program, but I'll

17   recommend it.

18        MR. SER:  Thank you, your Honor.

19        THE COURT:  And I'll also recommend that he be

20   designated to a facility as close as possible to his home in

21   Sullivan County, New York.

22        All right.  Anything else?

23        Ms. Cohen?

24        MS. COHEN:  No, your Honor.

25        Thank you.

1    THE COURT:  My deputy just handed me a note about

2    registration as a sex offender.  There is nothing in the

3    presentence report about that as a condition of supervised

4    release.  There usually is.  I'm not sure why that is.

5         The person who did this report is not familiar to me.

6    Obviously, I disagree with a lot of what's in the report, or at

7    least a lot of what's in the recommendation.

8         MS. COHEN:  I actually did not catch that, either.

9    But yes, he is required to register as a sex offender.

10        THE COURT:  Well, I don't have the exact language

11   of --

12        Hold on just one second.

13        THE DEPUTY CLERK:  It's one of the mandatory

14   conditions?

15        THE COURT:  It's one of the mandatory conditions,

16   right.

17        Hold on one second.

18        (Pause)

19        THE COURT:  This will be included among the mandatory

20   conditions.

21        MR. SER:  It is in the plea agreement, your Honor.  I

22   would point that out.

23        (Pause)

24        THE COURT:  Okay.  So one additional mandatory

25   condition of supervised release is that the defendant shall

1584TERmsS                          Sentence

1    comply with the requirements of the Sex Offender Registration

2    and Notification Act, as directed by the Probation Officer,

3    Bureau of Prisons or any state sex offender registration agency

4    in which he or she resides or is working or is a student or was

5    convicted of a qualifying offense.

6              So that is now on the record as a mandatory condition.

7              All right.  Thank you.

8              Anything else, Ms. Cohen?

9              MS. COHEN:  No, your Honor.

10             THE COURT:  Mr. Ser?

11             MR. SER:  No, your Honor.

12             Thank you.

13             THE COURT:  All right.  Mr. Terwilliger, I wish you

14   the best of luck.

15             THE DEPUTY CLERK:  All rise.  This Court will be in

16   recess.

17                         -   -   -

18

19

20

21

22

23

24

25